UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA BUCK, | CASE NO. 1:13-cv-00701-LJO-MJS |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND |
| v. | (ECF No. 13) |
| CEMEX, INC., et al., | |
| Defendants. | |
| _____/ | |

I. **INTRODUCTION**

On April 2, 2013, Plaintiff Trisha Buck filed a Complaint, on behalf of herself and all others similarly situated, in the Superior Court of California, County of Stanislaus, Case No. 683813. Plaintiff alleged four causes of action against Defendants under California's Labor Code for failure to provide meal periods, rest periods, and accurate written wage statements and for failure to timely pay all final wages. She also alleged a cause of action for unfair competition under California Business and Professions Code §§ 17200, et seq.

Plaintiff, a former cement truck driver for Defendant(s), seeks to represent all

1

individuals employed by Defendants as drivers in California. She alleges Defendants failed to provide drivers with thirty minute meal periods and ten minute rest breaks as required by California law, that those failures resulted in wage under-payments, inaccurate wage statements, and failure to pay full wages timely on termination. According to Plaintiff, these failures also constituted unfair and unlawful business practices under California law.

On their face, Plaintiffs' allegations raise no federal claims. Further, there is no alleged diversity of citizenship to bring the case within the jurisdiction of this Court.

However, on May 13, 2013, Defendants removed this case to federal court claiming that Plaintiff's allegations brought the claims within Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), and thereby raised federal questions subject to the jurisdiction of this Court. (ECF No. 2.) Specifically, Defendants assert that Plaintiffs are members of Teamsters Local No. 386 and that their employment terms and conditions are governed by a collective bargaining agreement (CBA) between Defendant and the Teamsters Local. According to Defendants, resolution of Plaintiffs' claims will require analysis and interpretation of the CBA.

On June 13, 2013, Plaintiff filed a motion seeking the Court's order remanding the case to California Superior Court. (ECF No. 13.) The motion was timely. 28 U.S.C. § 1447(c). In essence, Plaintiff alleges that the Complaint seeks to enforce non-negotiable statutory rights and protections which arise exclusively out of state law and exist independently of the CBA. Plaintiff argues further that the mere need to consult the CBA in the course of resolving Plaintiff's claims does not trigger Section 301 preemption.

On July 5, 2013, Defendants filed Opposition to the Motion for Remand. (ECF No. 20.) Plaintiff filed her reply July 12, 2013. (ECF No. 23.) On July 17, 2013, the Court

deemed the matter submitted without the need for hearing and oral argument. (ECF No. 24.)

## II. LEGAL STANDARD

### A. Removal

"'[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . .'" Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 7-8 (1983) (citation omitted); see also 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); see also Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule' . . . ." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule recognizes that the plaintiff is the master of his or her claim. "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." Id.

While a defense of preemption, also known as "ordinary preemption," is insufficient to demonstrate removal jurisdiction, "complete preemption," which is a corollary to the well-pleaded complaint rule, would be a sufficient basis for removal. Rains v. Criterion Sys., Inc., 80 F.3d 339, 344 (9th Cir. 1996). Under the complete preemption doctrine, the

3

force of certain federal statutes is considered to be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987). Section 301 is a federal statute that can have complete preemptive force. Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 558-562 (1968).

B.  **Section 301 of the LMRA**

Section 301 of the Labor Management Relations Act (LMRA ) preempts a state-law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748 (9th Cir. 1993) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405–06 (1988)).  In determining whether section 301 preemption applies, "[t]he plaintiff's claim is the touchstone for [the] analysis; the need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim.  If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense." Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001).

Further, a "reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms." Ramirez, 998 F.2d at 749.  "Causes of action that only tangentially involv[e] a provision of a collective bargaining agreement are not preempted by section 301.  Nor are causes of action which assert nonnegotiable state-law rights . . . independent of any right established by contract." Id. at 748 (citations and internal quotation marks omitted).  Thus, as the Ninth Circuit observes, "[t]he demarcation between preempted claims and those that survive § 301's

4

reach is not . . . a line that lends itself to analytical precision." Cramer, 255 F.3d at 691. "'Substantial dependence' on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between 'looking to' a CBA and 'interpreting' it is not always clear or amenable to a bright-line test." Id.

### III. THE PARTIES' POSITIONS

Though the emphasis of each differs, the Parties' respective characterizations of the law applicable to preemption generally do not differ from one another or with the Court's outline above.

#### A. Thus, Plaintiff argues:

Plaintiff's claims are based exclusively on non-waiveable statutory rights afforded all California employees under minimum labor standards governing wages, meal periods, and rest periods and exist independently of the CBA upon which Defendants rely for removal. Interpretation of the CBA is unnecessary to determine whether Defendants' employees are given the opportunity to take statutorily mandated meal and rest periods. Plaintiff alleges only state law causes of action that do not arise from or call into question any CBA terms, compensation rates, or formulae. Plaintiff does not allege any violation of the terms of the CBA.

Claims based on employee rights conferred by state law are not preempted by Section 301 unless the state law claims are "substantially dependent" on the interpretation of the collective bargaining agreement. Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1059-60 (9th Cir. 2007); Humble v. Boeing Co., 305 F.3d 1004, 1007 (9th Cir. 2002). "[T]he term 'interpret' is defined narrowly - it means something more than 'consider,' 'refer

to,' or 'apply.'" Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000). When the plaintiff's claims are based "on the protections afforded them by California state law, without any reference to expectations or duties created by the CBA [ ], [t]heir claims are neither founded directly upon rights conferred in the CBA nor 'substantially dependent upon' interpretation of the CBA terms." Cramer, 255 F.3d at 693-94 (citing Caterpillar, Inc., 482 U.S. at 394). "[T]he bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Gregory v. SCIE, LLC, 317 F.3d 1050, 1052 (9th Cir. 2003) (citing Livadas v. Bradshaw, 512 U.S. 107, 122-24 (1994)); see also Lingle, 486 U.S. at 413, n. 12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled . . . . [N]ot every dispute tangentially involving a provision of the CBA is preempted by §301 . . . .") (citations and internal quotation marks omitted); Cramer, 255 F.3d at 691 ("Looking to the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption.") (citations and internal quotation marks omitted).

The Ninth Circuit and the United States Supreme Court have repeatedly held that collective bargaining agreements cannot bargain away nonnegotiable statutory protections. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985) ("Clearly, §301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law."); Balcorta, 208 F.3d at 1111 ("Moreover, §301 does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights . . . . Were we to extend the § 301 complete preemption doctrine to allow for preemption by

virtue of such a waiver, 'parties would be able to immunize themselves from suit under state-laws of general applicability by simply including their unlawful behavior in a labor contract.'") (internal citation omitted); <u>Firestone v. Southern California Gas Co.</u>, 219 F.3d 1063, 1065 (9th Cir. 2000) ("Of course, not every dispute involving provisions of a collective-bargaining agreement is preempted by the LMRA.  When the meaning of particular contract terms is not disputed, the fact that a collective-bargaining agreement must be consulted for information will not result in § 301 preemption.") (internal citation omitted); <u>Jimeno v. Mobil Oil Corp.</u>, 66 F.3d 1514, 1522 (9th Cir. 1995) ("The LMRA does not [ ] preempt the application of a state law remedy when the 'factual inquiry [under the state law] does not turn on the meaning of any provision of a collective-bargaining agreement.'"); <u>Bonilla v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 407 F.Supp.2d 1107, 1113 (C.D. Cal. 2005) (holding that plaintiffs' claims were not preempted by federal law because the plaintiffs alleged that they were not paid as required by state law and did not cite to or seek enforcement under any provision of the CBA.)

Indeed, Section 301 only preempts "claims founded directly on rights <u>created</u> by collective-bargaining agreements, and claims '<u>substantially dependent</u> on analysis of a collective bargaining agreement.'" <u>Caterpillar</u>, 482 U.S. at 394 (emphasis added).  More recently, the Court explained "that §301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and . . . that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement that decides whether a state cause of action may go forward." <u>Livadas</u>, 512 U.S. at 123-24 (citation omitted).  Or, as the Ninth Circuit aptly stated, "states may provide substantive rights to workers that apply without regard to a CBA; a state court suit seeking to vindicate

these rights is preempted only if it 'requires the interpretation of a collective-bargaining agreement.'" Cramer, 255 F.3d at 690 (quoting Lingle, 486 U.S. at 413).

Plaintiff argues that Defendant's sole basis for removal is Plaintiff's (and prospective fellow class members') membership in a union which has a CBA with Defendants.

**B      And Defendant argues:**

Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. §185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted) . "Although the language of § 301 [of the LMRA] is limited to '[s]uits for violation of contracts,' it has been construed quite broadly to cover most state-law actions that require interpretation of labor agreements." Associated Builders & Contrs. v. Local 302 IBEW, 109 F.3d 1353, 1356-1357 (9th Cir. 1997) (citing Allis-Chalmers Corp., 471 U.S. at 220).  This is because "the policy in favor of national uniformity in labor law is so powerful that it displaces state law with respect to claims involving the interpretation or enforcement of collective bargaining agreements." Id. at 1356 (citing Lingle, 486 U.S. at 404).  Such a policy "authoriz[es] the development of federal common-law rules of decision, in large part to assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution." Id. (citing Livadas, 512 U.S. at 122 (footnote omitted)). Parties may not avoid Section 301 preemption by artful pleading of a complaint that fails to disclose that the plaintiff's employment was governed by a collective bargaining

8

agreement. See Young, 830 F.3d at 997. Indeed, many Section 301 suits "do not assert breach of the collective bargaining agreement and are nevertheless held preempted because they implicate provisions of the agreement." Associated Builders, 109 F.3d at 1357. In such cases, it is proper for the court to look beyond the face of the complaint to determine whether the state claim is preempted; i.e., to determine whether the outcome of the state claim depends on analysis of the terms of the collective bargaining agreement. Young, 830 F.2d at 997 (district court appropriately looked beyond face of the complaint in finding Section 301 preemption where complaint did not reveal that the plaintiff's employment was governed by a collective bargaining agreement); see also Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1406 (9th Cir. 1991) (plaintiff "cannot avoid removal by 'artfully pleading' only state law claims that are actually preempted by federal statutes").

## IV.     **THE REAL DISPUTE**

The issue upon which the parties truly conflict is that of whether the meal period obligations imposed on California employers by California Labor Code § 512(a) apply to employees such as Plaintiff.

As a truck driver for Cemex, Plaintiff was a member of Teamsters Local 386 labor union. While employed, her wages and working conditions were governed by the parties' CBA which included terms and conditions governing wages, meal periods, grievances and arbitrations. Section 7 of the CBA specifically provides for, consistent with California law, a ten minute rest period and thirty minute lunch breaks every four hours, although as to the latter, the CBA gives the driver the option of taking an "on duty" meal and being paid for that time or taking the lunch break "off duty".

Plaintiff argues that these provisions are not fully consistent with California law and may not deviate from it.

Defendant responds that Labor Code §§ 512 (e) and (f) allow employers of commercial drivers subject to a valid CBA to exempt themselves from § 512's terms if the CBA expressly provides for, among other things, employee wages, hours, working conditions, and meal periods and for "final and binding arbitration of disputes concerning application of its meal period provisions . . . ." California Labor Code § 512(e)(2).

Plaintiff argues that the CBA at issue here does not meet these requirements for exemption because it does not provide for final and binding arbitration as required by California law. Plaintiff concedes that the CBA establishes a grievance procedure for disputes arising out of its interpretation and application, but insists that procedure does not provide for final and binding arbitration. Specifically, the plan calls for progressive dispute resolution steps culminating in submission of grievances "to the Board of Adjustment or an arbitrator." (CBA, ECF No. 3, Exh. A, §§ 10(A)-(E)). There is also an optional provision for a mutually agreed non-binding mediation before submitting to the Board or an arbitrator. (Id. at § 10(G)). The power of the arbitrator or Board and the remedies available are restricted by the terms of the CBA. (Id. at § 10(H)). Nowhere do the words "final and binding" appear with regard to the grievance procedure.

Defendants respond, persuasively, that Plaintiff's argument is based on a strained and unsupportable interpretation of the CBA's provision for preliminary, informal steps toward resolution of disputes and the absence of the words "final and binding". The Court agrees with Defendants in these respects and finds nothing presented by Plaintiff to rule out finality.

In support of finality, Defendants note that § 10(A) of the CBA reads: "[a]ny question . . . involving . . . interpretation and application [of the CBA] shall be considered a grievance and subject solely to resolution under the following procedures." It then outlines the procedures referred to above; those procedures preserve to the parties the right to submit a dispute to the Board of Adjustment or Arbitrator. If the issues goes to a Board of Adjustment and the Board becomes deadlocked, the union may pursue Arbitration.

At first blush, one might be concerned with whether a finding of the Board under the CBA is the equivalent of the Labor Code's call for arbitration. However, it appears that the Union has the option to choose whether to present its grievance to the Board or to arbitration. (Id., at § 10(E)). Under that reading, arbitration under the CBA is always available to the employee. Thus the question remains whether arbitration as provided in the CBA is final and binding within the meaning of Labor Code § 512.

## V. ANALYSIS

Based upon the foregoing, the Court concludes that if the CBA's provision for arbitration of meal break issues is final and binding, then California Labor Code § 512 exempts it from the nonnegotiable, non-waivable protections afforded by the statute. In that case, since the CBA makes specific and rather unique provision for meal breaks for drivers, the CBA must be consulted to determine if Defendants met its obligation to Plaintiff and to similarly situated drivers with regard to meal breaks. In that case it must be said that the terms of the CBA are "inextricably intertwined" with the issue, Allis-Chalmers Corp., 471 U.S. at 213, i.e., that resolution of the issue is "substantially dependent upon" the terms of the CBA, Burnside, 491 F.3d at 1059. Indeed, the CBA terms will control that issue. In such a case, the issue would be subject to this Court's jurisdiction under LMRA

§ 301 and the other issues raised by the Complaint would come within the supplemental jurisdiction of this Court even if only tangentially involved with the CBA.

Regrettably, and oddly, the CBA does not specifically address this issue. However, without more, the language which does exist appears supportive of Defendant's view of the issue. The CBA does not provide for any further review. The language in the CBA to the effect that disputes are "subject solely to resolution under the following procedures" is consistent with the conclusion that decisions thereunder are final and binding. Section 10(J) is too, although less so, insofar as it suggests that the arbitration or, at the union's election, the Board decision, shall be the only way in which the employer's resolution can be overruled.

Defendant cites to Orion Pictures Corp. v. Writers Guild of America, West, Inc., 946 F.2d 722, 724 (9th Cir. 1991) (quoting Millmen Local 550 v. Wells Exterior Trim, 828 F.2d 1373, 1376 (9th Cir. 1987)) for the proposition that arbitration awards issued under collective bargaining agreements are considered final if "intended by the arbitrator to be [a] complete determination of every issue submitted. . . ." And, Defendant notes, the Supreme Court has held that an award by a committee may be enforceable under LMRA § 301 if it reflects the parties' chosen method of settling disputes under the collective bargaining agreement even if not referred to as a result of arbitration. General Drivers, Warehousemen & Helpers v. Riss & Co., 372 U.S. 517, 519 (1963).

The authorities support the conclusion that the CBA is final and binding even though those particular words do not appear in it. Specifically, based upon the foregoing, the Court concludes that as the case now stands, there being no CBA language or legal authority to the contrary, it must be said that the CBA provision for arbitration is final and

binding within the meaning of California Labor Code § 514. Consequently, the CBA must be consulted and relied upon to determine the meal break issues in this case. To the extent that statement may be disputed, arguably the CBA must be consulted to determine the final and binding issue. Accordingly, the Court concludes that the state law claims here are preempted by LMRA § 301. The motion for remand shall be denied.

IT IS SO ORDERED.

Dated:   August 29, 2013                     /s/ *Michael J. Seng*
                                             UNITED STATES MAGISTRATE JUDGE